Argued and submitted May 18, affirmed November 24, 2004

Lyman Gates MASON
and Kathleen H. Mason,
*Respondents,*

*v.*

PIEDMONT PROPERTIES, INC.,
an Oregon corporation,
*Appellant,*

*and*

Leonard W. GOTSHALK,
Linda W. Gotshalk, Robert Schacht, Albin Co.,
Copeland Lumber Yards, Inc.,
State of Oregon Department of Revenue,
Mills Ltd.,
dba Credit Bureau of Klamath County,
David G. Reed, Michele A. Reed,
United States of America,
XIT LLC,
aka Hamilton Fund LLC,
Tyrholm Big R, Inc.,
Clark Real Estate Company,
aka Clark Real Estate Co., Inc.,
and Universal Fund LLC,
*Defendants below,*

*and*

LONE PINE RANCH OF SOUTHERN OREGON,
*Assignee below.*

Leonard GOTSHALK,
*Third-Party Plaintiff below,*

*v.*

Jamis M. JOHNSON
and John Hollingshead,
*Third-Party Defendants below,*

*and*

Maryann SCHACHT,
Trustee on behalf of
Schacht Community Property Trust,
*Trustee below.*

9604826CV; A120954

100 P3d 1136

Kenneth M. Tharp argued the cause for appellant. With him on the briefs was Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore, P. C.

Stephen C. P. Carroll argued the cause for respondents. With him on the brief was Muhlheim, Boyd & Carroll.

Before Edmonds, Presiding Judge, and Schuman and Ortega, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Defendant Piedmont Properties, Inc. (Piedmont) appeals from a trial court order quashing its notice to redeem real property foreclosed on in Klamath County. ORS 19.205(2)(c) (2001), *amended by* Or Laws 2003, ch 576, §§ 85 to 90a. Piedmont argues that it is a mortgagor under the redemption statutes, *former* ORS 23.520 through 23.600 (2001),[1] and, therefore, that it holds the right to redeem the subject property. The trial court ruled that Piedmont had conveyed its interest in the property before the foreclosure and no longer is a mortgagor. We review for errors of law, ORS 19.415, and affirm.

The material facts in this matter are not in dispute, and the following chronology appears from the trial court record. In 1991, Piedmont purchased real property in Klamath County from plaintiffs, the Masons.[2] After the close of the sale, $390,000 of unpaid principal remained owing. On April 9, 1991, Piedmont gave a promissory note and trust deed to plaintiffs to secure that obligation. On April 26, 1991, defendants Robert Schacht and Albin Co. recorded trust deeds that made the subject property security for Piedmont's payment obligations of $75,000 and $30,000 to them respectively. By August 1994, Piedmont was in default on its obligation to the Masons, and it entered into a settlement agreement with them. On April 3, 1995, Piedmont executed yet another trust deed involving the subject property to secure payment of a $203,500 obligation to defendant the Universal Fund. In May 1996, defendant XIT, now known as the Hamilton Fund, received an assignment of that interest from The Universal Fund. Other judgments against Piedmont held by several companies and government bodies also became liens against the subject property.[3]

---

[1] *Former* ORS 23.520 to 23.600 (2001) have been renumbered to various locations in the 2003 Oregon Revised Statutes. We refer to the 2001 version in this case because the relevant events occurred under the application of that law.

[2] Although the lengthy case below involved multiple parties, many of whom we identify, only Piedmont and the Masons are parties to this appeal.

[3] Default judgments were eventually entered by the trial court against those defendants.

In 1996, Piedmont was again in default on its obligation to The Masons. Piedmont and The Masons then entered into a modification of the 1994 settlement agreement, but Piedmont once again defaulted. In November 1996, The Masons filed an action for judicial foreclosure of the trust deed on the property. In December 1997, the court entered a stipulated judgment of foreclosure awarding The Masons judgment against Piedmont and foreclosing Piedmont's interest in the property. The court found that The Masons' liens were "superior to any other interest, lien, or claim of the Defendants, or any of them, in that property." It ordered that "all interest which Defendant Piedmont Properties, Inc., had on or after April 9, 1991, in the real and personal property" be sold by the sheriff as one parcel. However, it also ordered that The Masons withhold execution upon the judgment so long as Piedmont met a schedule of payments set forth in the judgment. By March 1998, Piedmont had failed to meet its obligations under the judgment, and plaintiffs obtained a final judgment of foreclosure that was consistent with the December 1997 judgment (the Masons' judgment).

In April and May 1998, stipulated judgments were entered against Piedmont on the cross-claims of defendants Schacht and Albin Co. and defendants The Universal Fund and XIT. In April 2000, the sheriff sold the real property to Lone Pine Ranch of Southern Oregon (Lone Pine) pursuant to the stipulated foreclosure judgment entered in May 1998. We will refer to those events as "the XIT judgment" and "the first sheriff's sale." The XIT judgment ordered that "*all interest* which the applicable defendants have in the subject real property shall be sold by the sheriff * * *." (Emphasis added.)

In July 2000, Lone Pine filed for bankruptcy, listing the property as an asset. On August 8, 2000, the sheriff returned a writ of execution on the Masons' judgment without taking action on it after receiving notice thatLone Pine had commenced the bankruptcy proceeding. The Masons thereafter obtained relief from the automatic stay in the bankruptcy case, now a Chapter 7 bankruptcy, so that a sheriff's sale could occur. In July 2002, The Masons purchased, "subject to redemption, all of the interest the within named Defendant(s) had on or after 04/09/91" in the property at a sheriff's sale held pursuant to their judgment (the second

sheriff's sale). On August 14, 2002, the court entered an order confirming the sale of the property to them. It also ordered that the redemption rights of the judgment debtor or its successor in interest would expire on January 22, 2003.

On January 7, 2003, Piedmont filed a notice of intent to redeem. The Masons responded with a motion to quash the notice. They argued that any redemption right that Piedmont held in the property had vested in Lone Pine before the sheriff held the sale on the Masons' judgment. It followed, in their view, that the bankruptcy trustee held the redemption rights in the property. After a hearing, the trial court issued a letter opinion, ruling for the Masons. It reasoned,

"Up to the time of the actual foreclosure[,] the debtor or any other party of interest has an equitable right to redeem by payment of the debt, ORS 88.100.[4] After the sale, [a] party's rights of redemption are governed by ORS 23.530, ORS 23.540 and ORS 23.560.[5] * * *. The statutory redemption period for the mortgagor or debtor is 180 days after the date of sale. ORS 23.560[.] The period of redemption for a junior lien creditor is 60 days. ORS 23.540. Piedmont having conveyed its interest to Lone Pine prior to the date of the sale, became a junior lien holder subject to ORS 23.540."

---

[4] ORS 88.100 (2001), *amended by* Or Laws 2003, ch 576, § 352 provides:

"If, before a decree is given, the amount then due with the costs of suit is brought into court and paid to the clerk, the suit shall be dismissed. If the same is done after decree and before sale, the effect of the decree as to the amount then due and paid shall be terminated, and the execution, if any has issued, shall be recalled by the clerk. When an installment not due is adjudged to be paid, the court shall determine and specify in the decree what sum shall be received in satisfaction thereof, which sum may be equal to such installment, or otherwise, according to the present value thereof."

[5] *Former* ORS 23.560(1) (2001), *renumbered as* ORS 18.582 (2003) provides:

"The mortgagor or judgment debtor whose right and title were sold, or the heir, devisee or grantee of the mortgagor or judgment debtor, who has acquired by inheritance, devise, deed, sale, or by virtue of any execution or by any other means, the legal title to the property sold, may, at any time within 180 days after the date of sale, redeem the property; provided that a transfer of the judgment debtor's interest in the property, either before or after sale, shall preclude the judgment debtor from the right to redeem unless the proceeds from the sale are insufficient to satisfy the judgment, in which event the judgment debtor shall have the right to redeem at any time within 10 days after the 180 days herein allowed for redemption, and not otherwise."

The trial court then ordered the notice of intent to redeem quashed.

On appeal, Piedmont argues that it has a statutory right to redeem as mortgagor within 180 days of the second sheriff's sale. ORS 86.715 provides, in relevant part:

> "A trust deed is deemed to be a mortgage on real property and is subject to all laws relating to mortgages on real property * * *. For the purpose of applying the mortgage laws, the grantor in a trust deed is deemed the mortgagor and the beneficiary is deemed the mortgagee."

Piedmont is correct that, under ORS 86.715, it was a mortgagor at the time of the first sheriff's sale. What it does not recognize is that it lost that status when it failed to redeem the property within the statutory period permitted for redemption from the first sheriff's sale to Lone Pine. *See generally Franklin v. Spencer*, 309 Or 476, 479-80, 488, 789 P2d 643 (1990) (discussing the applicable statutes and explaining that, "[i]f the right to redeem is not exercised during the redemption period, the sheriff's conveyance to the purchaser completes the transfer of 'legal title'"). The XIT judgment provided that "*all interest* which the applicable defendants have in the subject real property shall be sold by the sheriff * * *." (Emphasis added.) Thus, the only property interest that Piedmont retained after the first sheriff's sale was a right of redemption that expired when the time for redemption from the first sheriff's sale passed. *Id.* Therefore, the trial court properly quashed Piedmont's notice of intent to redeem.

Affirmed.